IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* | * | |
| LESA SCHRUM and | | CIVIL ACTION NO. _____ |
| JULIETTE SKELTON | * | |
| | * | |
| *Plaintiffs* | * | |
| | | FILED UNDER SEAL |
| v. | * | 31 U.S.C.  §§ 3729-3732 |
| | * | |
| HYPERHEAL HYPERBARICS, INC., | * | |
| SAMER SAIEDY, MD, PA, | | JURY TRIAL DEMANDED |
| ERIC SHAPIRO, | * | |
| SAMER SAIEDY, | | |
| LAURENCE ABRAMSON, | * | |
| RICHARD SHAPIRO, | | |
| ROBERT BECKER, and | * | |
| JEANETTE DAVIS | | |
| | * | |
| *Defendants* | | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**PLAINTIFF'S COMPLAINT PURSUANT TO 31 U.S.C. §§ 3729-3732
OF THE FEDERAL FALSE CLAIMS ACT**

## INTRODUCTION

1.  Plaintiff Qui Tam Relators, Lesa Schrum and Juliette Skelton ("Relators"),

through their attorney C. Justin Brown, Brown & Nieto, LLC, file this Complaint and

Demand for Jury Trial under seal, against HyperHeal Hyperbarics, Inc., Samer

Saiedy, MD PA, Eric Shapiro, Samer Saiedy, Laurence Abramson, Richard Shapiro,

Robert Becker, and Jeanette Davis (sometimes referred to collectively as

"Defendants"), and allege as follows:

## I.  <u>NATURE OF ACTION</u>

2.  Relators bring this action on behalf of the United States, pursuant to the *qui tam* and retaliation provisions of the Federal False Claims Act, 31 USC § 3729 *et seq.*, to recover damages and civil penalties arising from Defendants' violations of the Federal False Claims Act ("False Claims Act" or "FCA").

3.  In connection with the application for and receipt of funds from the United States Government, through the Department of Defense (DoD), the Defense Health Agency (DHA), Tricare (a component of the DoD Military Health System), the Department of Health and Human Services (HHS), the Centers for Medicare and Medicaid Services (CMS), and the Medicare program, the Defendants (a) knowingly presented, and caused to be presented, to an officer of the United States Government, false and fraudulent claims for payment and approval; and (b) knowingly made, used, and caused to be made and used, false records and statements to get false and fraudulent claims paid and approved by the Government, all in violation of Title 31, United States Code, § 3729(a)(1) & (2).

4.  More specifically, this action arises from Defendants' efforts to obtain reimbursement for hyperbaric oxygen therapy and related services, provided pursuant to contracts with Tricare and Medicare, by creating fraudulent claims and statements and submitting those claims to agents of the Government at DHA and CMS (via Tricare and Medicare). Through these claims, Defendants intentionally billed Tricare and Medicare for services that they knew were not eligible for

payment because the services were either (a) never rendered to patients, (b) rendered by persons not authorized to do so, or (c) rendered in violation of governing regulations and contract terms.

5.   Relators informed Hyperheal's shareholders, board of directors and others of Hyperheal's fraudulent activity. As a result of these whistle-blowing activities, Relators have been harassed, threatened and discharged, as described more fully below.

6.   In addition, Defendant Samer Saiedy, MD, PA (DBA Maryland Vascular Specialists, hereafter "MVS") referred patients to Defendant HyperHeal's facilities. Through their relationship with Defendant Hyperheal, MVS physicians then submitted fraudulent physician oversight claims for HBOT services allegedly rendered at Defendant Hyperheal's facilities. Defendant Hyperheal then paid MVS physicians a percentage of the payments received for the physician oversight claims.

## II.   JURISDICTION

7.   This Court has subject matter jurisdiction over the claims alleged in this Complaint under 28 U.S.C. § 1331 (Federal Question), § 1345 (United States as Plaintiff), and 31 U.S.C. § 3732(a) (False Claims Act).

8.   This Court has personal jurisdiction over the Defendants named in this Complaint pursuant to 31 U.S.C. § 3732(a) because the Defendants transact business in the District of Maryland and because an act proscribed by 31 U.S.C. § 3729

occurred within this District. Section 3732(a) further provides for nationwide service of process.

9.   This action is not jurisdictionally precluded by the False Claims Act's public disclosure bar, 31 U.S.C. § 3730(e)(4). Upon information and belief, there has been no "public disclosure" of the matters alleged herein and this action is not "based upon" any such disclosure. Notwithstanding the foregoing, through their former employment with Defendant HyperHeal and their interactions with various employees of Defendant HyperHeal, Relators have "direct and independent knowledge" of the instant allegations. Additionally, Relators have "voluntarily provided," and offered to provide, this information to the Government before the filing of this Complaint. Therefore, to the extent any of these allegations is deemed to have been based upon a public disclosure, each Relator is an "original source" of this information within the meaning of the False Claims Act and is expressly excepted from its public disclosure bar.

### III.   VENUE

10. Venue is proper in the District of Maryland, under 28 U.S.C. § 1391(c) and 31 U.S.C. §3732(a), because Defendants are incorporated, headquartered and reside in this District and are subject to personal jurisdiction in this District.

## IV.   **PARTIES AND ENTITIES**

11. The United States is the real party in interest plaintiff in this action. It provides the funding, through DoD/DHA and HHS/CMS, for the reimbursement of services covered under and rendered pursuant to Tricare and Medicare contracts.

12. Relator Schrum is a resident of Maryland. She worked for Defendant HyperHeal as an off-site, independent Billing Specialist from August, 2012, until August, 2015. She worked under the supervision of then-CEO and Defendant Eric Shapiro. Relator was responsible for billing Tricare and Medicare for the services rendered by Defendant Hyperheal to covered patients. Because of her unique position within the defendant corporation, Relator acquired personal knowledge of the facts supporting the allegations in this Complaint.

13. Relator Skelton is a resident of Maryland. She worked for Defendant HyperHeal as an Office Manager from March, 2013, until September, 2015. She worked under the supervision and direction of then-CEO and Defendant Eric Shapiro. Relator managed the daily operations of Defendant Hyperheal's practice. Because of her position within the defendant corporation, Relator acquired personal knowledge of the facts supporting the allegations in this Complaint.

14. Defendant HyperHeal Hyperbarics, Inc., is a privately held Maryland corporation with its principal office located at 1212 York Road, Suite B201, Lutherville, Maryland 21093. The current directors of the corporation are Defendant Eric Shapiro, Defendant Samer Saiedy, and Defendant Laurence

Abramson. Starting as early as 2012, and continuing up to the present, Defendant

HyperHeal provided hyperbaric oxygen therapy to patients covered by the Tricare

and Medicare programs.

15. Defendant Samer Saiedy, MD, PA, operating under trade name Maryland

Vascular Specialists ("MVS"), is a professional association incorporated in Maryland,

with its principal office located at 7600 Osler Drive, Suite 201, Towson, Maryland

21204. Defendant Samer Saiedy is the owner and resident agent of this corporation.

16. Defendant Eric Shapiro is, and was during the times relevant to this

complaint, an officer, director and shareholder of Defendant HyperHeal.

17. Defendant Samer Saiedy is, and was during the times relevant to this

complaint, an officer, director and shareholder of Defendant HyperHeal. He is also

the owner of Defendant Samer Saiedy, MD, PA/MVS.

18. Defendant Laurence Abramson is a director of Defendant Hyperheal.

19. Defendant Richard Shapiro is, or was at the times relevant to this complaint,

an officer, director and shareholder of Defendant HyperHeal.

20. Defendant Robert Becker is, or was at the times relevant to this complaint, a

shareholder of Defendant HyperHeal.

21. Defendant Jeanette Davis is, or was at the times relevant to this complaint, a

shareholder of Defendant HyperHeal.

## V.   **FALSE CLAIMS ACT**

22. The False Claims Act provides, in pertinent part, that:

(1) Any person who... (A) knowingly presents, or causes to be presented, [to an officer, employee, or agent of the United States Government] a false or fraudulent claim for payment or approval; [or] (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

\*\*\*

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461), plus 3 times the amount of damages which the Government sustains because of the act of that person.

\*\*\*

(b) For purposes of this section –

(1) the terms "knowing" and "knowingly" (A) mean that a person, with respect to information (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information; and (B) require no proof of specific intent to defraud;

(2) the term "claim" (A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded; and (B) does not include requests or demands for money or property that the Government has paid to an individual as compensation for Federal employment or as an income subsidy with no restrictions on that individual's use of the money or property.

31 U.S.C. §3729

## VI.   DEFENDANT'S FRAUDULENT SCHEMES

### a. BACKGROUND

23. This claim is based upon transactions between 2012 and 2015, and possibly up to the present, in which Defendant HyperHeal provided hyperbaric oxygen treatment ("HBOT") to patients. Defendant HyperHeal entered into contracts with Tricare and Medicare under which it treated patients covered by either program and then billed the corresponding program for reimbursement at rates specified in the contracts.

24. Under proper protocol, a new patient seeking treatment meets with a physician for an initial consultation. The physician assesses the patient's condition and prescribes treatment as appropriate. The initial consultation is billed as an office visit ("office consultation claim"). Under Medicare and Tricare contracts, HBOT is covered only when used to treat certain conditions ("covered conditions"). As such, a patient must have been diagnosed with a covered condition in order for the HBOT provider to receive payment under either the Medicare or Tricare contracts.

25. Following the initial consultation, patients returning pursuant to a treatment plan must be assessed prior to each treatment session ("dive") – not necessarily by a physician – to ensure that their vitals (i.e., blood pressure, heart rate, respiratory rate, and for diabetics, blood glucose levels) are within a certain range. It may be unsafe for patients to undergo HBOT if their vitals are either too low or too high. As

such, under proper protocol, patient vitals are checked and recorded prior to each session, and patients whose vitals are outside of the safe range are not permitted to dive.

26. In addition, proper protocol requires that a physician be present and immediately available for intervention – should it become necessary – any time that a patient is undergoing treatment. The time spent overseeing this treatment is billed by the service provider as a "physician supervision claim." If a physician is not available at a time when a patient is scheduled to dive, the patient should not be diving, and the session should be rescheduled.

27. Pursuant to this practice, Defendant HyperHeal would submit two claims to the insurer (Tricare or Medicare) for each HBOT session: one claim on behalf of the facility ("facility claim," billed under procedure code C1300 or G0277), and one claim on behalf of the supervising physician ("physician supervision claim," billed under CPT code 99183). The facility itself and any physician performing covered services each had their own unique identification numbers under which these claims would be submitted. In addition to meeting other criteria, both the facility and the physician must be contracted with the insurer in order for each of the claims to be covered and paid.

### b.  DEFENDANT HYPERHEAL'S PRACTICES

28. This suit is concerned with three types of fraudulent claims. The first involves fraudulently submitting claims for payment of services that were never rendered.

Once a patient had been prescribed HBOT, and once Defendant HyperHeal had

secured any necessary authorizations from the insurer, Defendant HyperHeal

submitted both facility and physician supervision claims even on dates when the

patient had not in fact received treatment.

29. Specifically, Relators are aware of 211 fraudulent claims – totaling

$374,654.00 – that Defendants submitted in this manner. The corresponding

patients and dates of service ("DOS") known to Relators, as of the time of this filing

and subject to supplementation, are as follows:

>   a) J.S., DOS range: 05/08/2013 – 11/07/2014
>
>   b) P.H., DOS 04/14/2013
>
>   c) D.M., DOS 04/05/2013
>
>   d) R.K., DOS range: 09/13/2013 – 10/02/2013

30. The second type of fraudulent claim involves fraudulently submitting office

consultation claims on behalf of physicians who had not actually seen the patient.

Instead, patients were seen by Defendant E. Shapiro, a hyperbaric chamber

technician who was neither a physician – as required for office consultation claims –

nor a contracted provider with the insurer. Defendant HyperHeal would then

submit claims under the name and unique identifier of a contracted physician.

Defendant HyperHeal would include fraudulent supporting documentation

indicating that the billing physician had in fact seen the patient, though other

internal documents showed that Defendant E. Shapiro, not the doctor, had seen the patient.

31. Specifically, Relators are aware of a total of 13 fraudulent claims – totaling $4,519.00 – that Defendants submitted in this manner. The corresponding patients and dates of service known to Relators, as of the time of this filing and subject to supplementation, are as follows:

     a) J.B., DOS 12/24/2013

     b) D.C., DOS 04/24/2013

     c) R.C., DOS 05/17/2013

     d) I.G., DOS 02/18/2014

     e) R.H., DOS 12/30/2013

     f) P.H., DOS 04/14/2013

     g) R.I., DOS 09/04/2013

     h) J.M., DOS 07/21/2014

     i) B.R., DOS 05/10/2013

     j) L.T., DOS 05/15/2014

     k) B.V., DOS 05/01/2014

     l) B.W., DOS 05/23/2013

     m) D.Z., DOS 01/09/2014

32. The third type of fraudulent claim involves fraudulently submitting physician supervision claims when in fact no physician was present or immediately available

for intervention. From the time Defendant HyperHeal first started providing HBOT, all of the physicians contracted with Defendant's facility to oversee treatment were rarely, if ever, on site or available during HBOT sessions. Despite this fact, Defendants fraudulently submitted physician supervision bills, which require that the billing physician be present and immediately available for intervention during each HBOT session. During one period, for example, Defendants went so far as to submit physician supervision claims during a period when the physician who was allegedly overseeing those sessions was literally on his death bed. Upon information and belief, every physician supervision claim submitted by Defendants was fraudulent, and the practice likely continues today.

33. The absence of a physician during HBOT sessions not only made the claims described in Paragraph 32 fraudulent, but more importantly, put peoples' lives at risk. Though not common, there are complications associated with HBOT that are potentially severe and life-threatening, including seizures and collapsed lungs. Allowing patients to undergo treatment when a physician was neither present nor immediately available to respond to life-threatening emergencies shows Defendants' complete disregard for patients' health and wellbeing.

34. The absence of a physician during an HBOT session also renders fraudulent the accompanying facility claim, because the session should not have occurred if a physician was not present. Thus, even for those sessions that did actually occur, neither Medicare nor Tricare would have paid the claims had they known that the

treatment was provided in violation of CMS guidelines, and as such, those claims were fraudulent as well. In essence, all of the claims ever submitted by Defendants were fraudulent in one way or another.

35. Defendants also risked the health and wellbeing of patients by manipulating patient vitals prior to HBOT sessions so that, on paper, patients would appear safe to dive. As noted in Paragraph 25, patients' vitals must be within a certain range to enable them to safely undergo treatment. However, for their own financial gain, Defendants willfully and recklessly disregarded patients' health and wellbeing by allowing patients to dive even when it was unsafe for them to do so.

36. Relators have personal knowledge that Defendants exploited the billing process to increase its income at the risk of its patients and at the expense of the Department of Defense, the Defense Health Agency, the Department of Health and Human Services, the Centers for Medicare and Medicaid Services, and the federal Tricare and Medicare programs.

37. This unlawful activity took place approximately between 2012 and 2015 – and it likely continues today.

38. Relators began suspecting fraud around January, 2015, after Tricare requested additional documentation in order to process two particular claims. Relator Skelton notified Relator Schrum that the patient in question had not received treatment on the dates referenced in Tricare's request.

39. At that time, Relator Schrum conducted an audit, comparing claims she had submitted to Tricare and Medicare against patient records housed in Practice Fusion, Defendant HyperHeal's electronic health records platform.

40. Following her audit, Relator Schrum worked with Relator Skelton and Defendant E. Shapiro to clarify inconsistencies between the data or to locate missing documents for submitted claims.

41. Through their review of patient and internal records, Relators Schrum and Skelton noticed the pattern of fraud described in Paragraphs 28 to 31. Through further conversations, Relator Schrum learned from Relator Skelton of the fraudulent practices described in Paragraphs 32 to 35.

42. Relator Schrum notified officers, directors and shareholders of her findings. Specifically, Defendants Saiedy, E. Shapiro, Abramson, R. Shapiro, Becker, and Davis were all aware of the billing errors and fraudulent claims discovered by Relators Schrum and Skelton. Several employees of Hyperheal were also aware of the fraudulent conduct. Defendants' response was largely aimed at containing any adverse impact caused by Relators' findings, rather than seeking to uncover and remedy the illegal conduct.

43. Tricare and Medicare had no way of knowing that the Government was paying fraudulent claims because they relied on fraudulent documents submitted by Defendants in support of its claims and had no way of knowing that a patient had

not actually received treatment or been seen by a doctor, or that no doctor had been present during treatment.

44. As a result of Relators' whistleblowing activities, each has been the subject of retaliation. Relator Schrum was threatened and harassed by Defendants as a result of her investigation and her cooperation with insurers in responding to inquiries regarding questionable claims. Relator Skelton was unlawfully terminated as a result of her continued cooperation with insurers in responding to inquiries regarding questionable claims.

45. In or around September 2015, Relator Skelton complied with a request for documentation from Tricare. Immediately following Relator Skelton's transmission of the requested documents to Tricare, Defendants Saiedy and Abramson reprimanded Skelton for sending the documents and then fired her.

46. In addition to the fraudulent claims and practices described above, Defendant Saiedy forged a relationship between Defendants Hyperheal and MVS whereby Defendant MVS, through its physicians, referred MVS patients to Hyperheal for HBOT. MVS physicians, through Hyperheal, then submitted fraudulent physician oversight claims to Tricare and Medicare for physician oversight services allegedly provided at Hyperheal facilities.

47. Defendant Hyperheal then paid Defendant Saiedy and other MVS physicians a percentage of the funds received from Tricare and Medicare for the physician oversight claims.

## VII.   COUNT I: VIOLATION OF FALSE CLAIMS ACT, 31 U.S.C. §3729(a)(1)

48. Relators incorporate by reference paragraphs 1 to 46 of this Complaint as though fully set forth herein.

49. Defendants, between 2012 and 2015, and possibly into the present, based upon information and belief, engaged in a continuous practice of: (a) knowingly presenting, and causing to be presented, to an officer and employee of the United States Government, false and fraudulent claims for payment and approval, and (b) knowingly making, using, and causing to be made and used, false records and statements to get false and fraudulent claims paid and approved by the Government, in that Defendant HyperHeal made claims to Tricare and Medicare, all in violation of 31 U.S.C. §§379(a)(1).

50. The Defendants knowingly presented or caused to be presented to an agency, officer, or employee of the United States, false and fraudulent claims for payment, for the purpose of receiving payment for services that were never rendered and which otherwise would not have been covered or payable under the respective Tricare or Medicare contracts.

51. The United States, unaware of the foregoing circumstances and conduct of the Defendants, made payments that resulted in its being damaged in an amount to be determined.

## VIII.   COUNT II: VIOLATION OF FALSE CLAIMS ACT, 31 U.S.C. §3730(h)

52. Relators incorporate by reference paragraphs 1 to 46 of this Complaint as though fully set forth herein.

53. As a result of Relators' whistleblowing activities, Defendant Hyperheal threatened, harassed, and discharged Relators for their lawful acts.

54. Relators are entitled to all the relief afforded by § 3730(h), including, without limitation, double back pay, interest on back pay, and special damages.

### IX.   PRAYER FOR RELIEF

WHEREFORE, Relators, on behalf of themselves individually, and acting on behalf, and in the name, of the Government of the United States, respectively, demand and pray that judgment be entered against the Defendant as follows:

1.   On the First Cause of Action under the False Claims Act, judgment against Defendants in the amount of three times the amount of damages the United States has sustained due to Defendants' actions, plus a civil penalty of $10,000.00 for each act in violation of the False Claims Act, as provided by § 3729(a), with interest. Treble damages and penalties would be in addition to the foregoing single damages;

2.   That Relators be awarded the maximum amount available under § 3730(d) of the False Claims Act for bringing this action, namely, 25 percent of the proceeds of the action or settlement of the claim if the Government intervenes in the matter (or pursues its claim through any alternate remedy available to the Government, §

3730(c)(5)), or, alternatively, 30 percent of the proceeds of the action or settlement of the claim, if the Government declines to intervene;

3. On the Second Cause of Action under the False Claims Act, that Relators be awarded the maximum amount available under § 3730(h).

4. That Relators be awarded all reasonable expenses that were necessarily incurred in prosecution of this action, plus all reasonable attorneys' fees and expenses, as provided by §§ 3730(d) and (h); and

5. Such other relief for the United States and Relators as this Court deems just and proper.

## X.   DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands trial by jury.

Dated: Baltimore, MD

February 24, 2016

Respectfully submitted,

C. Justin Brown, Esq.
Brown & Nieto, LLC
231 E. Baltimore Street, Suite 1102
Baltimore, Maryland 21202
Phone: (410) 244-5444
Fax: (410) 934-3208
E-Mail: brown@cjbrownlaw.com
*Attorney for Relator/Plaintiff*

18