# SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Defense Health Agency (DHA), acting on behalf of the TRICARE Program (collectively, the "United States"), HyperHeal Hyperbarics, Inc. ("Defendant" or "HyperHeal"), and Juliette Skelton and Lesa Schrum ("Relators") (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A. HyperHeal Hyperbarics, Inc. is a Maryland corporation that provides hyperbaric oxygen therapy to patients at multiple locations in Maryland.

B. On February 24, 2016, Juliette Skelton and Lesa Schrum ("Relators") filed a qui tam action in the United States District Court for the District of Maryland captioned *United States ex rel. Schrum, et al., v. HyperHeal Hyperbarics, Inc.*, Case No. 1:16-cv-00541-RDB, pursuant to qui tam provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Civil Action"). The Relators allege, among other things, that HyperHeal and its former President and part-owner, Eric Shapiro ("Shapiro"), submitted or caused the submission of false claims to the United States for hyperbaric oxygen therapy services that were not medically necessary, for hyperbaric oxygen therapy services that were not properly supervised by a physician, and for hyperbaric treatment which was not provided.

C. The United States contends that Defendant submitted or caused to be submitted claims for payment to the TRICARE Program, 10 U.S.C. §§ 1071-1110b ("TRICARE") in violation of the False Claims Act, 31 U.S.C. § 3729 *et seq.*

D. The United States contends that it has certain civil claims against Defendant for engaging in the following conduct, hereinafter referred to as the "Covered Conduct":

GOVERNMENT EXHIBIT A

From March 2013 to November 2014, HyperHeal submitted claims for one patient to TRICARE for hyperbaric oxygen therapy as if that therapy was supervised by a physician when, in fact, no physician supervised the therapy. Shapiro prepared bills indicating that the therapy was supervised by a physician when it was not supervised by a physician. During the same time period and for the same patient, HyperHeal submitted claims to TRICARE for medically unnecessary hyperbaric oxygen therapy. No qualified medical professional evaluated the patient's condition throughout the treatment. Instead, Shapiro, who was a hyperbaric oxygen therapy technician, directed the patient's treatment and obtained authorization for continued treatment by sending misleading documents to TRICARE.

E. This Settlement Agreement is neither an admission of liability by Defendant nor a concession by the United States that its claims are not well founded.

F. Relators claim entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relators' reasonable expenses, attorney's fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1. HyperHeal shall pay to the United States Four Hundred and Fourteen Thousand, Six Hundred and Forty Dollars and Twenty-Five cents (**$414,640.25**) ("Settlement Amount"), of which $207,000 is restitution. HyperHeal has already returned $114,640.25 to the United States. HyperHeal shall pay to the United States the remaining balance of $300,000, plus interest on this amount at a rate of 2.75% from March 18, 2019 until its first payment. HyperHeal's first payment shall occur no later than 10 days after the Effective Date of this Agreement, which is the date of the last signatory party to this Agreement. Payment shall be made by electronic funds transfer pursuant to written instructions to be provided by the U.S. Attorney's Office for the District of Maryland. HyperHeal shall pay the Settlement Amount in at least minimum installment payments of $50,000 per month such that the full Settlement Amount is paid not later than 180 days from

2

the Effective Date, but HyperHeal is able to pay the Settlement Amount in full at any time within the 180 day period.

2.	Conditioned upon the United States receiving the Settlement Amount from Hyperheal and as soon as feasible after receipt, the United States shall pay $74,635.25 to Relators by electronic funds transfer.

3.	HyperHeal has agreed to pay Relators $10,000 within 30 days of the Effective Date for expenses, and attorney's fees and costs, which Relators and Relators' counsel agree shall be a full and complete satisfaction of all their rights against HyperHeal arising out of this matter.

4.	Subject to the exceptions in Paragraph 7 (concerning excluded claims) below, and conditioned upon HyperHeal's full payment of the Settlement Amount, the United States releases HyperHeal together with its current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners, with the exception of Eric Shapiro; and the corporate successors and assigns of any of them, from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

5.	Subject to the exceptions in Paragraph 7 below, and conditioned upon HyperHeal's full payment of the Settlement Amount, Relators, for themselves and for their heirs, successors, attorneys, agents, and assigns, release HyperHeal from any civil monetary claim Relators have on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733 and all Relators' claims under subsection 3730(h).

6.	DHA expressly reserves authority to exclude HyperHeal from the TRICARE Program under 32 C.F.R. §§ 199.9 (f)(1)(i)(A), (f)(1)(i)(B), and (f)(1)(iii) (mandatory exclusion),

3

based upon the Covered Conduct. Nothing in this Paragraph precludes DHA or the TRICARE Program from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 7, below.

7.  Notwithstanding the releases given in paragraphs 4 and 5 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

> a.  Any liability arising under Title 26, U.S. Code (Internal Revenue Code);
>
> b.  Any criminal liability;
>
> c.  Except as explicitly stated in this Agreement, any administrative liability, including mandatory and permissive exclusion from Federal health care programs;
>
> d.  Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;
>
> e.  Any liability based upon obligations created by this Agreement;
>
> f.  Any liability of individuals;
>
> g.  Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;
>
> h.  Any liability for failure to deliver goods or services due;
>
> i.  Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

8.  Relators and their heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relators'

4

receipt of the payment described in Paragraph 2, Relators and their heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

9. Relators, for themselves, and for their heirs, successors, attorneys, agents, and assigns, release HyperHeal, and its officers, agents, and employees, from any liability to Relators arising from the filing of the Civil Action, or under 31 U.S.C. § 3730(d) for expenses or attorney's fees and costs.

10. HyperHeal waives and shall not assert any defenses HyperHeal may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

11. HyperHeal fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that HyperHeal has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

12. HyperHeal fully and finally releases the Relators from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Defendant has asserted, could have asserted, or may assert in the future against the Relators, related to the Covered Conduct and the Relator's investigation and prosecution thereof.

13. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier, Tricare or DHA contractor, or any state payer, related to the Covered Conduct; and HyperHeal agrees not to resubmit to any Medicare or Tricare or DHA contractor or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

14. HyperHeal agrees to the following:

    a. <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of X, its present or former officers, directors, employees, shareholders, and agents in connection with:

        (1) the matters covered by this Agreement;

        (2) the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

        (3) Hyperheal's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

        (4) the negotiation and performance of this Agreement;

        (5) the payment HyperHeal makes to the United States pursuant to this Agreement and any payments that Hyperheal may make to Relator, including costs and attorneys fees; and

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs). However, nothing in paragraph 17.a.(6) that may apply to the obligations undertaken pursuant to the CIA affects the status of costs that are not allowable based on any other authority applicable to Defendant.

      b.    <u>Future Treatment of Unallowable Costs</u>: Unallowable Costs shall be separately determined and accounted for by HyperHeal, and HyperHeal shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Defendant or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

      c.    <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: HyperHeal further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by HyperHeal or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. HyperHeal agrees that the United States, at a minimum, shall be entitled to recoup from HyperHeal any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by HyperHeal or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on HyperHeal or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

d. Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine HyperHeal's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

15. HyperHeal agrees to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement. Upon reasonable notice, HyperHeal shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. HyperHeal further agrees to furnish to the United States, upon request, complete and un-redacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

16. This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 17 (waiver for beneficiaries paragraph), below.

17. HyperHeal agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents,

sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

18. Upon receipt of the full and final payment described in Paragraph 1, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1). The Relators' dismissal shall be with prejudice. The United States' dismissal shall be with prejudice only with respect to the Covered Conduct. The United States' dismissal is otherwise without prejudice.

19. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

20. Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

21. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the District of Maryland. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

22. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

23. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

24. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

25. This Agreement is binding on HyperHeal's successors, transferees, heirs, and assigns.

26. This Agreement is binding on Relators' successors, transferees, heirs, and assigns.

27. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

28. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

***Signatures on the following pages***

## THE UNITED STATES OF AMERICA

DATED: 5/24/19   BY: /s/ _____
ROBERT K. HUR
United States Attorney

MATTHEW P. PHELPS
Assistant United States Attorney
U.S. Attorney's Office
District of Maryland

DATED: 18 April 209   BY: /s/ _____
LEIGH A. BRADLEY
General Counsel
Defense Health Agency
United States Department of Defense

**HyperHeal Hyperbarics, Inc. - DEFENDANT**

DATED: 4/25/19   BY: _____
                      Samer Saledy, MD, President
                      HyperHeal Hyperbarics, Inc.

DATED: 4/25/19   BY: _____
                      Stephen Bittinger
                      Counsel for HyperHeal Hyperbarics, Inc.

DATED: 4/30/19   BY: _____
                      Stephen Kaufman
                      Counsel for HyperHeal Hyperbarics, Inc.

**RELATORS**

DATED: 5/24/19    BY: _____
                      Lesa Schrum

DATED: 4/19/19    BY: _____
                      Juliette Skelton

DATED: 4/19/19    BY: _____
                      C. Justin Brown
                      Counsel for Relators Lesa Schrum and Juliette Skelton